|  |  |
|---|---|
| **Hearing Date:** | **September 22, 2021** |
| **Objection Deadline:** | **September 15, 2021** |

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| Décor Holdings, Inc., *et al.*,[1] | Case No. 19-71020 (REG)<br>Case No. 19-71022 (REG)<br>Case No. 19-71023 (REG) |
| Post-Confirmation Debtors. | Case No. 19-71024 (REG)<br>Case No. 19-71025 (REG)<br>(Substantively Consolidated) |
| BRYAN RYNIKER, IN HIS CAPACITY AS<br>LITIGATION ADMINISTRATOR OF THE<br>POST-CONFIRMATION ESTATES OF<br>DÉCOR HOLDINGS, INC., *et al.*, |  |
| Plaintiff,<br>v. | Adv. No. 20-08125−reg |
| BRAVO FABRICS and ROSENTHAL &<br>ROSENTHAL, INC., |  |
| Defendants. |  |

## JOINT MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS
## BRAVO FABRICS AND ROSENTHAL & ROSENTHAL, INC.

Defendants Bravo Fabrics ("Bravo") and Rosenthal & Rosenthal, Inc. ("Rosenthal", and

collectively with Bravo, the "Defendants"), by and through their undersigned counsel,

Montgomery McCracken Walker & Rhoads LLP, hereby file this Motion for Summary

Judgment (the "Motion") pursuant to Fed. R. Civ. P. made applicable in this proceeding by Fed.

R. Bankr. P. 7056 and Local Bankruptcy Rule 7056-1 and, in support, incorporate by reference

---

[1]     The debtors ("Debtors") in these chapter 11 cases, along with the last four digits of each Debtor's federal
tax identification number, are: Décor Holdings, Inc. (4174); Décor Intermediate Holdings LLC (5414); RAD
Liquidation Inc. (f/k/a The Robert Allen Duralee Group, Inc.) (8435); RAD Liquidation LLC (f/k/a The Robert
Allen Duralee Group, LLC) (1798); and RADF LLC (f/k/a The Robert Allen Duralee Group Furniture, LLC)
(2835).

their *Statement of Undisputed Material Facts in Support of Bravo Fabrics' and Rosenthal &
Rosenthal, Inc.'s Joint Motion for Summary Judgment* ("7056-1 Statement") filed
contemporaneously herewith, and state as follows:

## I.     RELIEF REQUESTED

1.     Bravo and Rosenthal bring this motion pursuant to Rules 7036, 7056, and 9013 of
the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and E.D.N.Y. Local
Bankruptcy Rule 7056-1, seeking entry of an Order: (1) granting summary judgment in favor of
Bravo and Rosenthal against Plaintiff Bryan Ryniker, in his capacity as Litigation Administrator
of the Post-Confirmation Estates of Décor Holdings, Inc. ("Plaintiff"), and (2) granting such
other and further relief as the Court deems just and proper.

## II.    PRELIMINARY STATEMENT

2.     As set forth more fully below, this Motion concerns a $60,648.42 preference
matter with complete ordinary course of business and new value defenses.  Nearly 97% of the
monies paid in the preference period ($58,755.53 out of $60,648.42) was paid to the Defendants
within 10 days of the historical average days late that the Debtors paid the Defendants.  The
remaining sum of $1,892.89, that was paid within 20 days of the historical average days late, is
then fully protected by significant unpaid new value.

3.     In addition to the Defendants having complete defenses to this preference
complaint and thus entitled to summary judgment, the Defendants are also entitled to summary
judgment due to the Plaintiff's admission of each and every request for admission ("RFAs")
served upon them by Bravo and Rosenthal.  By failing to timely respond to such RFAs and
failing to obtain an extension of time to respond from Defendants or from this Court, the Plaintiff
admitted every request for admission.  In fact, Plaintiff only finally partially responded to the

RFAs (thirty days late) after Defendants requested a Local Rule 7056-1 conference with this Court, by providing a belated and insufficient response to Rosenthal's RFAs.  Plaintiff never responded to Bravo's RFAs.

4.      Plaintiff has admitted facts and the application of law to facts that conclusively establish that Bravo and Rosenthal have complete ordinary course of business, ordinary business terms, and new value defenses to Plaintiff's Complaint.

5.      As such, no genuine issues of material fact remain in dispute, and Bravo and Rosenthal are entitled to summary judgment.

## III.    <u>STANDARD OF REVIEW</u>

6.      Federal Rule of Civil Procedure 56, which is expressly incorporated by Bankruptcy Rule 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also In re Wisell*, 494 B.R. 23, 33 (Bankr. E.D.N.Y. 2011); *In re Rogers*, 374 B.R. 510, 513 (Bankr. E.D.N.Y. 2007) ("It is well settled that a motion for summary judgment will be awarded where there is no genuine issue of material fact, and the prevailing party is entitled to judgment as a matter of law.").

## IV.    <u>ARGUMENT</u>

### A.    **The RFAs are Deemed Admitted**

7.      By failing to timely respond to the Bravo RFAs and Rosenthal RFAs, Plaintiff has admitted facts and the application of law to facts which conclusively establish that both Bravo and Rosenthal have complete ordinary course of business, ordinary business terms, and new value defenses to Plaintiff's Complaint.

8.     Federal Rule of Civil Procedure 36(a)(3), made applicable herein by Bankruptcy Rule 7036, governs requests for admission and specifically provides that "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). Such admissions are automatic, without need for a motion or any further action by the admission requesting party. *See, e.g., Open Text Inc. v. Northwell Health, Inc.*, 2020 WL 6655922, at *2 (C.D. Cal. Oct. 23, 2020); *Daniels v. Howe Law Firm, P.C.*, 2016 WL 11581822, at *9 (N.D. Ga. May 17, 2016); *Fed. Trade Comm'n v. Medicor LLC*, 217 F. Supp. 2d 1048, 1053 (C.D. Cal. 2002).

9.     As described in Bravo and Rosenthal's Joint 7056-1 Statement, which is incorporated herein by reference, Bravo and Rosenthal served their RFAs on Plaintiff on May 13, 2021, and Plaintiff did not timely serve a written answer or objection. Thus, Plaintiff has admitted each of the RFAs under Rule 36 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 36(a)(3); *see also Miller v. Westfield Steel, Inc. (In re Elrod Holdings Corp.)*, 426 B.R. 106, 112-13 (Bankr. D. Del. 2010) (by failing to respond to requests for admissions, plaintiff admitted "statements asserting that the invoice payments made within the preference period occurred during the ordinary course of business and that no evidence exists demonstrating that the Defendants had knowledge of Debtors' insolvency either during the preference period or prior to the Petition Date"). Such admission was automatic. *See Northwell Health, Inc.*, 2020 WL 6655922, at *2 ("Failure to timely respond to requests for admissions results in automatic admission of the matters requested."); *Howe Law Firm, P.C.*, 2016 WL 11581822.

10.     Importantly, under Rule 36, RFAs are self-executing and the matters were deemed admitted as soon as the 30-day response period ended.[2]  *See, e.g., Medicor LLC*, 217 F. Supp. 2d at 1053 ("No motion to establish admissions is needed because Federal Rule of Civil Procedure 36(a) is self-executing."); *Garcia v. City of Ceres*, 2010 WL 2490917, at *4 n.5 (E.D. Cal. June 16, 2010).

**B.    Summary Judgment Should Be Granted Based on the Admitted RFAs**

11.     Admissions are an appropriate basis for granting summary judgment.  Federal Rule of Civil Procedure 56(c) provides a list of support that a moving party may use to seek summary judgment, and admissions are specifically identified as an item that may be used by a party to assert "that a fact cannot be … genuinely disputed …."  Fed. R. Civ. P. 56(c)(1)(A); *see In re Carney*, 258 F.3d 415, 420 (5th Cir. 2001) ("Federal Rule of Civil Procedure 56(c) specifies that 'admissions on file' can be an appropriate basis for granting summary judgment."); *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir. 1987) ("Admissions made under Rule 36, even default admissions, can serve as the factual predicate for summary judgment."); *Donovan v. Carls Drug Co.*, 703 F.2d 650, 651 (2nd Cir. 1983) ("[admissions] may be used for Rule 56 summary judgment"); *O'Bryant v. Allstate Ins. Co.*, 107 F.R.D. 45, 48 (D. Conn. 1985) ("Admissions may demonstrate the want of a genuine issue of material fact on which a summary judgment may be premised.").[3]

---

[2]     In Plaintiff's opposition [A.D.I. 17] to Bravo's Local Rule 7056-1 pre-motion conference letter request [A.D.I. 16], Plaintiff contends that Bravo was required to file a discovery motion.  Such a suggestion is incorrect and contradicted by the clear and unambiguous language of Rule 36 of the Federal Rules of Civil Procedure.

[3]     Bravo and Rosenthal anticipate that Plaintiff will assert that his late responses to the RFAs negate his admissions.  Such an assertion should be rejected.  *See Kasuboski*, 834 F.2d at 1350 (where defendant failed to seek tolling of 30 day period to respond to admission or file a motion to withdraw admissions, district court properly granted summary judgment based on admissions that were deemed admitted due to defendant's failure to timely respond); *O'Bryant v. Allstate Ins. Co.*, 107 F.R.D. 45, 48 (D. Conn. 1985) ("To permit plaintiff now to contest in a Rule 56 procedure a matter which has been concluded under Rule 36 would permit plaintiff to subvert the purpose

12.     Not only are the admitted RFAs an appropriate basis for summary judgment, but Plaintiff cannot overcome those admissions.  Rule 36 admissions, "whether express or by default, are conclusive as to the matters admitted, [and] cannot be overcome at the summary judgement stage by contradictory affidavit testimony or other evidence in the summary judgment record."  *In re Carney*, 258 F.3d at 420.  "[A] a party cannot attack issues of fact established in admissions by resisting a motion for summary judgment."  *Kasuboski*, 834 F.2d at 1350 ("Affidavits and depositions entered in opposition to summary judgment that attempt to establish issues of fact cannot refute default admissions").

13.     Thus, Plaintiff's admissions regarding Bravo's and Rosenthal's defenses are "conclusively established," and summary judgment should be granted in Bravo's favor. *Kasuboski*, 834 F.2d at 1350.

### C.     Summary Judgment Must Be Granted on The Complaint's First Claim for Relief

14.     In the Complaint, Plaintiff alleged that the Debtors made one or more transfers (the "<u>Transfers</u>") to or for the benefit of Bravo and/or Rosenthal during the 90 days before the Debtors filed their bankruptcy petition.  Complaint ¶ 22.  Plaintiff further alleged that these transfers satisfied each of the *prima facie* elements for a claim to avoid and recover the transfers under section 547(b) of the Bankruptcy Code.  *Id.* ¶¶ 23-30.

15.     However, even if Plaintiff could prove each of the elements of a claim under section 547(b), Plaintiff's claim nevertheless fails as Bravo and Rosenthal have conclusively established full defenses under section 547(c).

### 1.     <u>Ordinary Course of Business</u>

---

of Rule 36 by simply ignoring it. Allowing such a result would render Rule 36 meaningless.  This could not have been the intention in the adoption of the rule.").

16.     Section 547(c) provides, in pertinent part, that a bankruptcy trustee may not avoid a transfer to the extent it was "in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee," and such transfer was either "made in the ordinary course of business or financial affairs of the debtor and the transferee," or "made according to ordinary business terms."

17.     The subjective "ordinary course of business" defense involves an examination of several factors including "(1) the prior course of dealing between the parties, (2) the amount of the payments, (3) the timing of the payment, and (4) the circumstances surrounding the payments." *Harrisson v. The Ink Spot (In re Rave Communications, Inc.),* 128 B.R. 369, 372 (Bankr. S.D.N.Y. 1991). In conducting an ordinary course analysis, courts look at several factors "including 'timing, the amount and manner a transaction was paid and the circumstances under which the transfer was made.'" *McCord v. Venus Foods, Inc. (In re Lan Yik Foods Corp.),* 185 B.R. 103, 111 (Bankr. E.D.N.Y. 1995) (quoting *Yurika Foods Corp. v. United Parcel Service (In re Yurika Foods Corp.),* 888 F.2d 42, 45 (6th Cir. 1989)); *see also Buchwald Capital Advisors LLC v. Metl-Span I., Ltd. (In re Pameco Corp.),* 356 B.R. 327, 340 (Bankr. S.D.N.Y. 2006) ("In determining whether a transfer satisfies the requirements of Section 547(c)(2)(A), courts examine several factors including "(i) the prior course of dealing between the parties, (ii) the amount of the payment, (iii) the timing of the payment, (iv) the circumstances of the payment, (v) the presence of unusual debt collection practices, and (vi) changes in the means of payment.").

18.     "Consistency among the payments made is all that is required." *Liebersohn v. WTAETV (In re Pure Weight Loss, Inc.),* 446 B.R. 197, 205 (Bankr. E.D. Pa. 2009). "A fact-intensive analysis is undertaken to decide whether differences in payments are significant enough

to preclude the ordinary course of business defense from applying to the transfers at issue." *Id.*

"Payments made during the preference period do not have to possess a rigid similarity to each

past transaction; however, there must be some consistency." *Stanziale v. Superior Tech. Res.,*

*Inc. (In re Powerwave Techs., Inc.)*, 2017 WL 1373252, at *4 (Bankr. D. Del. April 13, 2017)

(citing *Menotte v. Oxyde Chem., Inc. (In re JSL Chem. Corp.)*, 424 B.R. 573, 581 (Bankr. S.D.

Fla. 2010)).

19.     Establishing a prior course of the dealings between the parties is necessary in

order "to compare the payment practices during the preference period with the prior course of

dealing." *Jacobs v. Gramercy Jewelry Manufacturing Corp. (In re Fabrikant & Sons, Inc.)*,

2010 WL 4622449, at *3 (Bankr. S.D.N.Y. Nov. 4, 2010); *Cassirer v. Herskowitz (In re Schick)*,

234 B.R. 337, 348 (Bankr. S.D.N.Y. 1999). Generally, this involves a comparison of the number

of days between the invoice and payment dates during the 90-day period leading to the

bankruptcy petition, and the historical transactions between the parties before that. *See*

*Fabrikant*, 2010 WL 4622449, at *4; *Hassett v. Altai, Inc. (In re C.I.S. Corp.)*, 214 B.R. 108, 120

(Bankr. S.D.N.Y. 1997). "The starting point—and often ending point—involves consideration

of the average time of payment after the issuance of the invoice during the pre-preference and

post-preference periods…." *Fabrikant*, 2010 WL 4622449, at *3.

2.     The Transfers are Protected by the Ordinary Course of Business Defense

20.     Plaintiff admitted that "each of the Transfers were a payment of a debt incurred

by the Debtors in the ordinary course of business or financial affairs of the Debtors and Bravo

(as that phrase is utilized in section 547(c)(2) of the Bankruptcy Code)." *See* 7056-1 Statement ¶

12.  Plaintiff further admitted that "each of the Transfers were made in the ordinary course of

business or financial affairs of the Debtors and Bravo (as that phrase is utilized in section

547(c)(2) of the Bankruptcy Code)." *See id.* ¶ 13.[4]

21.     By Plaintiff's own admission, "the Debtors ordinarily paid Bravo beyond the

terms of the invoice." *See* 7056-1 Statement ¶ 17.  Notably, "[l]ate payment in conformity with

the prior course of dealing is in the ordinary course of business." *In re Rave Communications,*

128 B.R. at 372.  Plaintiff further admitted that:

> • The timing of the Transfers was consistent with the manner the Debtors paid Bravo in the year before the Petition Date.
>
> • Bravo undertook no "unusual collection activity" during the 90-day period before the Debtors filed their bankruptcy petition (the "Preference Period").
>
> • Every payment during the Preference Period was made by check, just like every payment made during the two-year period prior to the Preference Period (the "Historical Period").

*See* 7056-1 Statement ¶¶ 15-16, 18, 40.

22.     Specifically, Plaintiff admitted the following:

|  | **Historical Period** | **Preference Period** |
|---|---|---|
| **Range** | 16 days early to 185 days late | 28 days late to 57 days late |
| **Limited Range** | 79.7% of historical invoices (63/79) paid between 4 and 155 days late | All invoices paid between 28 days late and 57 days late |
| **Mean** | 47.57 days late | 45.71 days late and ~97% of Transfers paid within 10 days of historical period mean |

---

[4] Plaintiff also admitted that each of the Transfers were also made according to "ordinary business terms." *See* 7056-1 Statement ¶ 14.

*See* 7056-1 Statement ¶¶ 30-35.

23.    As such, the Transfers are protected by the ordinary course of business defense because they fall within the historical range.  *See, e.g., Forman v. Moran Towing Corp. (In re AES Thames LLC)*, 547 B.R. 99, 105 (Bankr D. Del. 2016) (finding payments of 10 and 19 days late were ordinary as the range "falls within the Historical Period range" which was 28 early to 35 late); *Burtch v. Detroit Forming, Inc. (In re Archway Cookies)*, 435 B.R. 234, 244 (Bankr. D. Del. 2010) (payments ranging from 41 to 64 days after invoice during preference period were ordinary where historical payments were made between 21 and 177 days after invoice date).

24.    Plaintiff admitted that during the Historical Period, "excluding any invoices that were initially factored by and owed to BB&T Bank, among the invoices that were always factored by and owed to Rosenthal, the average payment was made in 47.57 days." *Id.* at ¶ 34.[5] The median payment during the Historical Period, by Plaintiff's own admission, "was made 46 days after the due date." *Id.* at ¶ 33.  Meanwhile, Plaintiff admitted that during the Preference Period, the mean/average payment was 45.71 days late (*id.* at ¶ 35), *within less than 2 days of both the historical median and mean*.

25.    As the average time to pay in the preference period was less than 2 days different than the historical average, the Transfers were made in the ordinary course and are unavoidable. *See Unsecured Creditors Committee of Sparrer Sausage Co., Inc. v. Jason's Foods, Inc. (In re Sparrer Sausage Co., Inc.)*, 826 F.3d 388, 396 (7th Cir. 2016) (five day change from 22 historic average days to pay to 27-day average in the preference period was not "substantial enough to take any of the preference-period payments outside the ordinary course"); *Lovett v. St. Johnsbury*

---

[5] As admitted by Plaintiff, Bravo's invoices were "factored" by various other companies, including BB&T Bank and Defendant Rosenthal.  *See* 7056-1 Statement at ¶¶ 23-24.  During the Historical Period, all outstanding Bravo invoices previously factored by BB&T Bank were purchased by Rosenthal.  *Id.* at ¶ 25.

*Trucking*, 931 F.2d 494 (8th Cir. 1991) (payments were ordinary where they were paid 52 days on average compared to historical average of 62); *Pirinate Consulting Group, LLC v. Kadant Solutions Div. (In re NewPage Corp.)*, 2016 WL 5787237, at *4-5 (Bankr. D. Del. Sept. 30, 2016) (payments with 9-day difference between preference period and historical period averages were ordinary; *R.M. Taylor, Inc. v. Employers Insurance of Wausau (In re R.M. Taylor, Inc.)*, 245 B.R. 629 (Bankr. W.D. Mo. 2000) (payments were ordinary where they were paid 15 days on average compared to historical average of 3.29); *Lan Yik Foods*, 185 B.R. 103 (payments were ordinary where they were paid 110 days on average compared to historical average of 89); *Branch v. Ropes & Gray (In re Bank of New England Corp.)*, 161 B.R. 557 (Bankr. D. Mass. 1993) (payments were ordinary where they were paid 54.7 days on average compared to historical average of 38.4); *Official Committee of Unsecured Creditors v. Gold Force Int'l, Ltd. (In re Cyberrebate.com, Inc.)*, 296 B.R. 639 (Bankr. E.D.N.Y. 2003) (holding that the ordinary course defense applied to preference-period payments made on average 31 days after invoice, compared to the pre-preference-period average of 28 days after invoice) (*citing Huffman v. New Jersey Steel Corp. (In re Valley Steel Corp.)*, 182 B.R. 728, 737 (Bankr. W.D. Va. 1995) (deeming preference payments to be ordinary where made about 67 days after invoice, compared to the pre-preference-period average of 54 days).

26.    Five of the six invoices (totaling $58,755.53) paid during the Preference Period were within 10 days of the historical average of 47.57 days and 11 days of the 46-day median. *See* 7056-1 Statement at ¶ 26-28 and Exhibit D.  As such, those Transfers were made in the ordinary course and are unavoidable. The sixth invoice ($1,892.89), was paid within 20 days of the historical average and, as discussed below, is fully protected by new value.

27.    Additionally, Plaintiff admitted that:

• The Debtors never informed Bravo of any financial troubles suffered by the Debtors.

• There was no pressure during the Preference Period to pay invoices sooner or in any manner different than that during the Historical Period.

• Bravo's payment terms with the Debtors in the Preference Period were the same as Bravo's payment terms with the Debtors during the Historical Period.

• Neither Bravo nor Rosenthal undertook any unusual collection activity during the Preference Period.

*Id.* at ¶¶ 36-40.

28.     Lastly, Plaintiff admitted that he has "no documents to support any allegations and contentions to rebut Bravo's ordinary course of business defenses." *Id.* at ¶ 41.

29.     As such, Plaintiff has admitted facts that conclusively establish Bravo's ordinary course of business defense.  These admitted facts, and admitted application of law to facts, conclusively establish that Bravo and Rosenthal have a complete ordinary course of business defense and require that summary judgment be granted in their favor.

3.     <u>New Value</u>

30.     Plaintiff has also admitted facts that conclusively establish that Bravo and Rosenthal have a new value defense under section 547(c)(4) to any non-ordinary transfer.

31.     Section 547(c)(4) provides that a transfer may not be avoided if, after such transfer, a creditor "gave new value to or for the benefit of the debtor (A) not secured by an otherwise unavoidable security interest; and (B) on account of which new value the debtor did not make an otherwise unavoidable transfer to or for the benefit of such creditor."  11 U.S.C. § 547(c)(4).

32.     Section 547(c)(4) was designed to both "encourage trade creditors to continue dealing with troubled businesses" and "treat fairly a creditor who has replenished the estate after

having received a preference." *New York City Shoes, Inc. v. Bentley International, Inc. (In re New York City Shoes, Inc.)*, 880 F.2d 679, 680-81 (3$^d$ Cir. 1989); *see also Southern Technical College, Inc. v. Hood*, 89 F.3d 1381, 1384 (8th Cir. 1996) ("The purpose of § 547(c)(4) is to encourage creditors to deal with troubled businesses in the hope of rehabilitation.") (internal citations omitted); *Miller v. JNJ Logistics LLC (In re Proliance International, Inc.)*, 514 B.R. 426, 430 (Bankr. D.Del. 2014) ("The subsequent new value defense is intended to encourage creditors to work with companies on the verge of insolvency.") (internal citations omitted).

33.     Section 547(c)(4) "protects creditors who deal with financially unstable businesses and reasonably rely on their payments as a consideration for providing these future services." *Begier v. Krain Outdoor Advertising, Inc. (In re American International Airways, Inc.)*, 68 B.R. 326, 337 (Bankr. E.D. Pa. 1986); *see also New York City Shoes*, 880 F.2d at 680 (Section 547(c)(2) allows creditors to "rely on payments of back debt in shipping new goods …."). "[A] creditor who contributes new value in return for payments from the incipient bankrupt ... should not later be deemed to have depleted the bankruptcy estate to the disadvantage of other creditors." *Southern Technical College*, 89 F.3d at 1384 (internal citations omitted).

    4.     Any Transfer Not Protected By the Ordinary Course of Business Defense
       <u>is Protected by the New Value Defense</u>

34.     As set forth in the 7056-1 Statement, Bravo provided $12,483.75 of goods that were sold and delivered to the Debtors after one or more of the Transfers and for which no payment was made.  As such, those invoices qualify as new value as such goods were sold and delivered to Debtors in the preference period and after Transfers that Plaintiff alleges are preferential.  *See* 7056-1 Statement ¶ 43 and Exhibit D.

35.     Plaintiff admitted that "for each and every Transfer, Bravo gave new value to or for the benefit of the Debtor(s) after the date Bravo received the Transfer."  *See id.* at ¶ 42.

36.     This admitted application of law to fact conclusively establishes Bravo's full new value defense and precludes Plaintiff from recovering any of the Transfers as a matter of law.

**C.      The Complaint's Second Claim for Relief Fails as a Matter of Law**

37.     The Complaint's second claim for relief seeks in the alternative to avoid the Transfers as fraudulent conveyances.  *See* Complaint ¶¶ 31-33.

38.     However, Plaintiff has admitted that Bravo paid the full amount of each invoice sent by the Debtors to Bravo.  *See* 7056-1 Statement ¶¶ 26-29.  This is consistent with Exhibit A to the Complaint and paragraphs 25 and 26 of the Complaint in which the Plaintiff asserted that "each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtors to [Bravo]" and "[e]ach Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtors to [Bravo] before such Transfers were made ….".

39.     As such, Plaintiff cannot prove any set of facts that would establish its fraudulent conveyance claim.

**D.      The Remaining Claims for Relief Fail as a Matter of Law**

40.     The Complaint's third claim for relief seeks recovery of any avoided transfers, and the fourth claim for relief seeks disallowance of claims filed by Bravo against the Debtors' chapter 11 estate.

41.     Because Plaintiff's first and second claims for relief fail as a matter of law, Plaintiff is not entitled to avoid any transfers, and thus the third and fourth claims for relief fail as a matter of law as well.

**WHEREFORE**, Bravo and Rosenthal respectfully request that this Court grant their

Motion for Summary Judgment and dismiss Plaintiff's Complaint with prejudice.

Dated: August 31, 2021

**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**

By:/s/ Edward L. Schnitzer
    Edward L. Schnitzer
    437 Madison Avenue
    New York, NY  10022
    Telephone: (212) 867-9500
    Email: eschnitzer@mmwr.com

*Counsel for Bravo Fabrics and Rosenthal & Rosenthal, Inc.*