**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------- X
                                                                                         :   Chapter 11
                                                                                         :
                                                                                         :   Case No. 19-71020 (REG)
IN RE:                                                                   :   Case No. 19-71022 (REG)
                                                                                         :   Case No. 19-71023 (REG)
DÉCOR HOLDINGS, INC., *et. al.*,[1]       :   Case No. 19-71024 (REG)
                                                                                         :   Case No. 19-71025 (REG)
       Post-Confirmation Debtors.     :
                                                                                          :   (Substantively Consolidated)
                                                                                          :
                                                                                          :   Hon. Robert E. Grossman
---------------------------------------------------------- X
BRYAN RYNIKER, IN HIS CAPACITY AS  :
LITIGATION ADMINISTRATOR OF THE  :
POST-CONFIRMATION ESTATES OF     :
DÉCOR HOLDINGS, INC., *et al.*,            :
                                                                 :
                  Plaintiff,                   :
                                                                  :   Adv. Pro. No. 20-08125 (REG)
                 v.                             :
                                                                  :
BRAVO FABRICS, *et al.*,                       :
                                                                  :
                  Defendants.              :
---------------------------------------------------------- X

## Supplemental Findings of Fact and Conclusions of Law

       Bryan Ryniker (the "Plaintiff"), the Litigation Administrator for the post-confirmation debtors Décor Holdings, Inc., et al. (the "Debtors"), commenced separate preference actions against three sets of defendants ("Defendants") all represented by Montgomery, McCracken, Walker & Rhoads LLP. The Defendants each filed motions

---

[1] The debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Décor Holdings, Inc. (4174); Décor Intermediate Holdings LLC (5414); RAD Liquidation Inc. (f/k/a The Robert Allen Duralee Group, Inc.) (8435); RAD Liquidation LLC (f/k/a The Robert Allen Duralee Group, LLC) (1798); and RADF LLC (f/k/a The Robert Allen Duralee Group Furniture, LLC) (2835) (collectively, the "Debtors").

("Motions") for summary judgment asserting the affirmative defenses of ordinary course of business pursuant to 11 U.S.C. § 547(c)(2) and the contemporaneous exchange for new value defense pursuant to 11 U.S.C. § 547(c)(2). The Plaintiff filed oppositions and cross-motions ("Cross-Motions") seeking entry of summary judgment regarding their *prima facie* cases as to the preference claims.  At a hearing held on December 1, 2021, the Court granted the Cross-Motions, finding that the Plaintiff established a *prima facie* case regarding the preference claims alleged in each adversary proceeding.  The Court directed that the parties file additional briefs regarding the ordinary course of business defense and reopened discovery with respect to the new value defense.  Pursuant to the Court's directive, the parties were to choose the appropriate test regarding the ordinary course of business defense and to apply it to their specific case.  The parties were also directed to submit supplemental briefs regarding the new value defense. The Court has reviewed the briefs and for the reasons set forth below, the Court has determined that based on the average lateness of the payments during the agreed upon two year period prior to the preference period ("Baseline Period") when compared with the average lateness of the payments during the preference period, they are close enough to find that all of the payments made during the preference period are within the parties' ordinary course of business.

While a bit complicated, most courts have concluded that the ordinary course of business defense set forth in section 547(c)(2)(A) is a subjective test "'intended to protect recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee.'" *Jacobs v. Gramercy Jewelry Mrg. Corp. (In re M. Fabrikant & Sons, Inc*.), Adv. No. 08-1690, 2010 WL 4622449 *2 (Bankr. S.D.N.Y. Nov. 4, 2010) (citing 5 Collier on Bankruptcy ¶547.04[2], at 547-51 (15th Ed. 2010).   Being careful to recognize that substantial deviations from the parties' established practice are not protected, this

defense is necessary to provide a level of predictability so that suppliers such as the Defendants are permitted to keep payments that would otherwise be deemed preferences. *Unsecured Creditors Committee of Sparrer Sausage Co., Inc. v. Jason's Foods, Inc*., 826 F.3d 388, 393 (7th Cir. 2016) (other citations omitted). Congress has stated that the purpose of the ordinary course defense is to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or his creditors during the debtor's slide into bankruptcy." H.R. Rep. No. 95-595, at 373 (1977); S. Rep. No. 95-989, at 88 (1977). In addition, where the parties' commercial dealings have taken place over a significant time period, courts should consider carefully before finding that the debtor favored that creditor, and conversely, if the relationship is recent, courts will review the credit terms more rigorously to determine whether the debtor favored one creditor over another. *In re Conex Holdings*, LLC, 518 B.R. 269, 281 (Bankr. D. Del. 2014). With respect to the Defendants in these adversary proceedings, the business relationship with the Debtors was not recent and spanned for at least several years. Therefore, while the Defendants have the burden of establishing their ordinary course defense, the Court does take into consideration that fact that the Defendants had significant prior dealings with the Debtors which spanned over a number of years.

The relevant factors to consider when examining the ordinary course of business defense are (1) the prior course of dealing, (2) the amount of payments, (3 the timing of the payments and (4) the circumstances surrounding the payments. *In re Hechinger Inv. Co. of Delaware, Inc*., 321 B.R. 541, 548-49 (Bankr. D. Del 2004). No one factor is determinative regarding this issue. To determine whether transfers were in the ordinary course of business the Court is charged with determining what the ordinary course of business was and then to compare the preferential

transfers to it.  The Plaintiff has acknowledged that the Debtors ordinarily paid the Defendants beyond the stated terms of the invoice and undertook no unusual collection activity during the preference period, that every payment during the preference period was made by check, as were the payments during the Baseline Period, and the Debtors never informed the Defendants of any financial troubles suffered by the Debtors.  In addition, the Debtors admit that there was no pressure put on the Defendants to pay during the preference period.

The Bankruptcy Court has the sole discretion to determine which test or methodology to apply when analyzing the payments during the preference period.  *Unsecured Creditors Committee of Sparrer Sausage Co*., 826 F.3d at 395.   The two most common tests are the average-lateness method and the total-range method.  "The starting point – and often the ending point – involves consideration of the average time of payment after the issuance of the invoice during the pre-preference and post-preference periods, the so-called 'average lateness' computation theory."  *In re Fabrikant*, 2010 WL 6422449 at *3.   If the differences in averages is not material, the analysis ends there and all of the preference period transfers are deemed in the ordinary course.  *Unsecured Creditors Committee of Sparrer Sausage Co*., 826 F.3d at 396.

If the differences in averages are material or the averages are skewed by outliers, the Court may utilize a total range analysis or to further refine the test by applying a bucketing analysis.  See *Sass v. Vector Consulting, Inc. (In re Am. Home Mortg. Holdings, Inc*.), 476 B.R. 124, 138 (Bankr. D. Del. 2012) and *R.A. Brooks Trucking Co. (In re Quebecor World (USA), Inc*), 491 B.R.  379, 388 (Bankr. S.D.N.Y. 2013).  As stated by Seventh Circuit Court of Appeals, "[w]hile the average lateness method better compensates for outlier payments during the historical period, the total-range method often provides a more complete picture of the relationship between the creditor and debtor."  *Unsecured Creditors Committee of Sparrer*

*Sausage Co.*, 826 F.3d at 395. Under the total range of payments test, the Court reviews all of the payments made during the Baseline Period (which is agreed by all parties as the two years prior to the 90-day preference period) and determines the range of payments from the earliest to the latest. If the payments made during the preference period fit within the range, they are protected by the ordinary course of business defense. If the Court finds that the range of payments during the Baseline Period is too broad, the Court may adopt the bucketing analysis. Under the bucketing analysis, the Court reviews the payments made during the baseline period and groups them into buckets by age, then applies an appropriately sized bucket to the preference period payments to determine wheat is ordinary and what is not. *Id.* at 396. As this Court previously stated, a range from the Baseline Period that captures around 80% of the payments would be an appropriate size bucket.

As for the proper test to apply, the Defendants in each adversary proceeding have chosen the average date of payment to compare the Baseline Period payments with the payments made during the preference period. The Defendants argue that under this test, all of the preference payments identified in each adversary proceeding would qualify as ordinary course payments. The Defendants also applied the range of payments test, which also captured all of the payments in each adversary proceeding as ordinary course payments. Finally, the Defendants compared the payments in each case under the bucketing theory, which captured all but one payment in the amount of $1,937.03 in adversary proceeding number 21-8040. Kaufmann, the defendant in that adversary proceeding, has asserted that the new value exception would provide an adequate defense to cover that payment as well.

The Plaintiff has chosen the range of payments test because he believes it provides a more complete picture of the relationship between each of the Defendants and Debtors than the

average lateness test. According to the Plaintiff, using average payment times as a yardstick is not appropriate because there are "wild variations" in the Baseline Period for each case that are not present in the preference periods. The Plaintiff argues that because there is such a wide range of payments made during the baseline period in each adversary proceeding, there can be no ordinary course of business defense based on the application of this test. The Plaintiff cites to *In re Waterford Wedgewood USA, Inc.*, 508 B.R. 821, 835 (Bankr. S.D.N.Y. 2014) in support of his argument. However, in the *Waterford Wedgewood* decision, the court analyzed an ordinary course of business defense based on the business terms specific to the industry, which is an objective test under section 547(c)(2)(B). This is not the subsection the Defendants have chosen – they are relying on the subjective test set forth in subsection (c)(2)(A) based on the parties' prior conduct. In the other case cited by the Plaintiff, *In re Fabrikant*, 2010 WL 4622449, the court adopted the average lateness test and found that the averages were too far apart to apply that test. The difference between the two averages were approximately fifty days apart in the *Fabrikant* case, which is substantially different from the spreads between the averages in each of these adversary proceedings. The court in *Fabrikant* declined to apply the range of payment test because there were aberrant, unusual payments during the chosen baseline period which were made well outside the average, thereby skewing the range.

      This Court agrees with the Defendants and adopts the average lateness test. This method is more likely to "weed out" payments that could skew the analysis. If the average lateness test reveals that the averages in each case are within several days of each other and the Court believes that the Baseline Period provides a sufficient comparison to the payments made during the preference period, then each of the Defendants will have met their burden and no further tests need be examined. The results of the average lateness test are as follows:

Adversary Proceeding No. 21-8040:  Average lateness during the Baseline Period is 40.55 days.  Average lateness during the preference period is 36.71 days. The difference is less than four days.

Adversary Proceeding No. 20-8133:  Average lateness during the Baseline Period is 39.33 days.  Average lateness during the preference period is 46.2 days. The difference is less than seven days.

Adversary Proceeding No. 20-8125:  Average lateness during the Baseline Period is 47.57 days.  Average lateness during the preference period is 45.2 days. The difference is less than three days.

The Court has examined applicable case law regarding this test along with the general course of conduct between the parties during the Baseline Period and the preference period.  The largest spread in averages between the Baseline Period and the preference period is less than seven days.  Keeping in mind that there are scores of transactions during the Baseline Period in each case, coupled with the fact that there are sufficient transfers during the preference period in each case to analyze, these averages provide sufficient evidence of an ordinary course defense to the otherwise preferential transfers.  In cases examining long-standing relationships between debtors and suppliers, it is apparent that averages which are within these ranges are acceptable. *Unsecured Creditors Committee of Sparrer Sausage Co*., 826 F.3d at at 396 (five day change from 22 historic average days to pay to 27-day average in the preference period was not "substantial enough to take any of the preference-period payments outside the ordinary course"); *Lovett v. St. Johnsbury Trucking*, 931 F.2d 494 (8th Cir. 1991) (payments were ordinary where they were paid 52 days on average compared to historical average of 62); *Pirinate Consulting Group, LLC v. Kadant Solutions Div. (In re NewPage Corp.)*, 2016 WL 5787237, at *4-5

(Bankr. D. Del. Sept. 30, 2016) (payments with 9-day difference between preference period and historical period averages were ordinary); *Stanziale v. Industrial Specialists Inc. (In re Conex Holdings*, LLC), 522 B.R. 480, 490 (Bankr. D. Del. 2014) (difference in average days to pay of 7 is not "problematic [and does not] take the preferential transfers outside of the normal course of dealings between the [debtor and the defendant]"); *In re Lan Yik Foods Corp.*, 185 B.R. 103 (payments were ordinary where they were paid 110 days on average compared to historical average of 89).

The Plaintiff has provided graphs intended to show that the payments made during the preference period were so out of the norm that using an average lateness test masks these anomalies. However, the Court views these graphs differently. They show how within the norm the payments during the preference period were as they are clumped so closely to the average payment date. If anything, they are completely in character based on the parties' prior payment history.

The Court sees no reason to go beyond the average lateness test but even if the Court were to adopt the range of payment analysis, it would have been appropriate to further narrow the test by using the bucketing analysis. Under a bucketing analysis, the percentage of payments in each bucket need not be identical. See, e.g., *St. Johnsbury Trucking*, 931 F.2d at 498 (transfers were ordinary "even though the percent paid within 45 days in the 90–day period was considerably greater than in the prior 12–month period (54.9 percent versus 21.2 percent, respectively*).");* In re Conex Holdings, LLC*, 522 B.R. at 485 (payments ordinary even though 86% were paid within 55 days of invoice date while historically only 40% were paid within 55 days of invoice date); *In re T.B. Home Sewing Enterprises*, 173 B.R. at 788-89 (preferences

ordinary even though all were paid in the middle of the historic range in a bucket that only reflects 18% of historical payments).

In our case, a bucketing analysis encompassing 82% of the payments made in the Baseline Periods for each of the cases would capture all of the preference period payments in Adversary Proceeding Nos. 20-8125 and 20-8133, and all but one payment in the amount of $1,937.03 in Adversary Proceeding No. 21-8040.  While the Court does not need to analyze the new value defenses, it is likely that Kaufmann would be able to demonstrate at least part of the new value alleged in the total amount of $51,524.25 which would cover this nominal payment.

For these reasons, the Court grants the Motions as to their ordinary course of business defense pursuant to section 547(c)(2)(B).  The only cause of action outstanding is the fraudulent conveyance claim in each adversary proceeding.  However, since the Trustee has established a *prima facie* case regarding the preference claims, it appears that each of the transfers were made on account of an antecedent debt.  There would be no basis for a constructive fraudulent conveyance claim because adequate value was received by the Debtors.  The Defendants shall circulate to the Plaintiff and submit proposed orders in each adversary proceeding granting the Motions as set forth herein and dismissing each adversary proceeding.



Dated: Central Islip, New York
February 3, 2022

Robert E. Grossman
United States Bankruptcy Judge